May it please the Court. My name is Cass Harstad and I represent Cindy Fuller, the plaintiff and the appellant in this matter. I'd like to reserve three minutes for rebuttal. Your Honor, Title VII requires that when an employer learns of sexual harassment, it has an obligation to take immediate action to end the harassment and to deter future harassment. IDOC failed to do so here. Indeed, for eight years, IDOC exhibited deliberate indifference to reports of sexual harassment lodged against one of its employees, Herb Cruz. In 2010, when two women refused to work with him, he was transferred to Caldwell, where he was put in a position of authority over my client, Cindy Fuller. He later raped her. Could you explain the authority issue? Because the opposing counsel says that Mr. Cruz was not in authority, that they were at the same level. I wasn't sure what the actual facts were on that. So, Your Honor, he was not her supervisor in the Vance v. Ball concept. He couldn't hire or fire her. However, she was a probationary employee, and he was, she was a probationary parole officer, and he was a senior parole officer. So her field work needed to be supervised by a senior parole officer. And she testified in her deposition, he couldn't hire and fire me, but he could tell me what to do. It seems to me you have got, maybe I'm wrong in reading it, you raised two separate claims. One is sort of responsibility for what happened to your client in terms of the assault, and the other one is a hostile work environment claim. Is that fair? Well, correct, Your Honor, except for that with hostile work environment claims, you need to consider the totality of assault. Right. No, I understand. I want to focus on that one separately. Before you get to the hostile work environment claim, I'm trying to also lay out, figure the facts here. Your client never knew of the prior complaints of sexual harassment, correct? She did, Your Honor. Actually, when she reported the rapes, she said, Kim Harvey said to her, he has several, let's see, what were his... Right. Now, he said he has several incidents in the past, something like that. Correct. But I guess my problem with that claim is this. At some point in time, your client, before that, learned that Mr. Cruz had been, was under investigation for rape of somebody outside the workplace. Correct. And nonetheless continued the relationship with him, correct? Well, Your Honor, her testimony during her deposition was... This is, it's a yes or no. She did continue her relationship with him, yes? Yes, but she was not aware of the, really the nature of the allegations... I understand. ...until she herself was raped. I understand. But she understood that he'd been charged, he said, I've been charged with, I can go in and look at it. She knew he'd been charged with a sexual assault, correct? At some stage, yes. At some stage prior to August 22nd. Right. And then nonetheless continued her relationship with him because he said, I didn't do it. Yes, and I believe he didn't, she didn't really understand... But my question's not about that. My question is, if on that, if we know that, then what difference would it have made had she learned that non-assault allegations had been made against Mr. Cruz in the workplace years before? In other words, your hostile work environment claim is entirely separate. But with respect to that claim, I find it hard to believe that someone who had been told that he was under investigation for a felony would think that the fact that he may have engaged in unwarranted touching or comments years before would have changed the nature of her willingness to be with him. Well, in your honor, it doesn't necessarily change the nature of her relationship with Mr. Cruz. What it does do is that IDOC, there's eight years of sexual harassment complaints made against Cruz, and IDOC... Well, there's not eight years. There's sexual harassment complaints that date eight years back. Right. There were four individual sexual harassment complaints over the course of the eight years prior to that. Right. And what was the last one before? In 2010. So in May or June of 2010, it was brought to light. I'm still having trouble putting together the causal relationship between that and harassment in the workplace. The harassment has to be the rape that Mr. Cruz conducted, correct? Well, no, your honor. Actually, IDOC's reaction, and IDOC continued to condone Cruz's sexual misconduct. As I understand your hostile work environment claim, it is basically that the day after the rape was reported, a memo went out to everybody basically saying we really feel sorry for Mr. Cruz and make sure that you keep up his spirits and that we keep him as an employee and so on and so forth. In other words, as I understand it, it's the response and not the act that caused the rape. Yes, your honor. And the thing is that the district court, what it did is it sort of said the rapes occurred off conduct and so we're not going to consider them at all. And there are several, the Ninth Circuit has never looked at this specifically, but the Ninth Circuit has held in several cases that off-duty conduct can be considered part of a hostile work environment. Sure. And just to be clear, I think that's substantial evidence in support of your hostile work environment claim. I'm still having trouble sorting out your separate claim of harassment under Title VII, because I'm having trouble finding evidence that supports that. With respect to your hostile work environment claim, I agree. We look at all the facts together. And this e-mail, I won't ask your opponent about it, strikes me as pretty probative of hostile work environment. But I don't understand the harassment part of your claim. Well, so the, I believe, so if you look at the Doe case out of the Seventh Circuit and the Ferris case out of the Second Circuit, I believe courts have held that where, as here, there was a pattern of sexual misconduct and the employer knew about it, there's a duty, the employer has a duty to protect employees from predatory coworkers. Therefore, your argument here is based on the rapes, correct? Well, it's based on the rapes and Ida's reaction. That's because the only, see, the duty to protect against predatory coworkers, if it was breached, the damage occurred when the predatory coworker predated, correct? Well, I guess. The reaction afterwards may well have led to a hostile work environment. Judge Graber is entirely correct in pointing to that. I'm just trying to figure out, are you trying to hold them responsible for the rape? We are, Your Honor, based on the fact that they knew of a pattern of misconduct by coworkers. That's entirely different than a hostile work environment claim, right? No, it's all one of one hostile work environment claim, Your Honor. I mean, in the complaint, we allege one hostile work environment claim. That's my question. Do you have a claim separate from your hostile work environment claim? Yes, we do, Your Honor. And I would like to address that the reaction that IDOC took to the rapes was more than just this e-mail. They provided Mr. Cruz with paid leave and they continued to deny Ms. Fuller's request for paid leave. Well, she wasn't, as I understood the policy, she wasn't flat out entitled to it, but there was discretion to grant it to her. Correct, Your Honor. So there was discretion in contrast to what was done with Mr. Cruz? Well, I believe it's important to note that, so yes, but I believe that it's important to note, we acknowledge that for some period of time, Cruz should have been on paid leave. But on October 31st, IDOC management sustained Cindy Fuller's allegations against him. So they determined by preponderance of the evidence that Cruz raped Cindy Fuller. And despite that, they continued to provide him with paid leave for two and a half months, and they continued to deny her requests even after they had made the decision. They also... So is the action on which you rely the denial of, if they continued him on paid leave up for the whole time that they did, but also given her paid leave, that would not have created a hostile work environment in your view? Correct. Was it gender based, the decision to give him paid leave and not her? Could you repeat that? Was the decision to give him paid leave, but not to give her paid leave gender based? I believe so, Your Honor. Why? Well, because if you look at the totality of the circumstances, there's an eight year history of not disciplining him for sexual misconduct. They knew, IDOC managers knew... I've asked a different question. Just about administrative leave, what the policy is on administrative leave and whether he fell within it on its own terms and whether she did not on its own terms. Well, according to the policy, it was discretionary for both parties. It was discretionary for Cruz and it was discretionary for... But the testimony in this case was that we always, when somebody is under criminal investigation, since we don't want to prejudge the case, put them on paid administrative leave. And I take it what the director said was, I never use the unusual circumstances, one, because I've been told to save money. So my question is still the same. This may be a fact that leads to her perception of the work environment, but taken by itself, is it gender based? Well, I believe so, Your Honor, considering that after October 31st, they continued to provide him with paid leave. On October 31st... Why is that gender based? Because the criminal investigation was finished. Well, their investigation was finished. And they continued to keep him on paid leave for two and a half months thereafter. They eventually allowed him to resign. And when he resigned, Director Ranke said he would consider rehiring Herb Cruz. Now, this is what the notice of contemplated action said. And I think we're missing each other like ships in the night. I understand why all these facts taken together can support a claim for a hostile work environment. I was trying to figure out whether taken individually, any of these facts would have violated Title VII. Well, I think so. If you look at what he said with regards to rehiring Cruz, there were three separate women that accused him of sexual assault. All of them said, two of them, I'm sorry, two of the three said, he left me with bruises on my body. And Director Ranke still said, I would consider rehiring Cruz. That, to me, is evidence of discriminatory animus that can be imbued into Director Ranke's and Atencio's decisions. Even though he said it after your client resigned? Yes, I think it's evidence of discriminatory animus, where he said, I will not hire Cindy Fuller back. She was too emotional after she was raped. But I would consider hiring Cruz back, who was accused of forcible rape by three separate people. You say it's evidence of discriminatory animus. How does discriminatory animus play into proof of hostile work environment? Well, Your Honor, if you look at them ignoring her reports of sexual harassment... I'm asking you a very specific question. Every time I ask you a question, you go through the entire litany of the history of the case. Is discriminatory animus relevant to our determination of hostile work environment? It may well be. That's the question I'm asking. Well, a hostile work, I don't know if discriminatory animus is necessarily relevant to a hostile work environment claim. But it is relevant to a disparate treatment claim, which is the paid leave issue. Right. So that discriminatory animus was in response to your question regarding the disparate treatment claim. You have just under three minutes, if you want to save it for rebuttal. Yes, Your Honor. I do want to point out that with the totality of the circumstances, IDOC ignoring Ms. Fuller's request to file a sexual harassment complaint against Cruz, they ignored its responsibility to create a workplace safety plan. When she came in and said, I mean, these were violent rapes that left her bruised and battered. And when she came in and said, please, can they, can people be told that I not, that he can't be within a thousand feet of the property, she brought up the door at my doors. The first one legally have done that. The facts said that it was a sealed court order. And I don't know what the rules are in Oregon for Idaho. One of those states. Your Honor, she, she did not ask that they be notified that a seat, that a protective order had been issued against him. They, she asked that he not, that people be notified. He shouldn't be allowed within a thousand feet of the property. And if you see him, please call the police. They did notify the staff that if they saw him to report it to a supervisor that he wasn't allowed. So it wasn't just the a thousand feet that wasn't included or. Well, there's two issues. First of all, the supervisors, Henry, or I'm sorry, arrest us. Alhambra testified that he didn't know about the protective order. He thought she was out because of her lupus. So calling the supervisors really, I don't know what good it would have done. And the purpose of the protective order is to keep him from coming onto the property. Her office was so close to the front door that once he was on the property, it was going to be too late for her. He'd be within her office within a nanosecond. So I would like to reserve my remaining minute. You may do that. Thank you, Your Honor. Morning, Your Honors. My name is Phil Kolar and I represent the respondents in this matter. And perhaps just to get into it, Judge Hurwitz, I know you had a question. Well, I want to ask you about the e-mail. As I understand the sequence of events in this case, and I'll leave out some intermediate events. Certainly. At some point, Ms. Fuller comes to the department and says, Mr. Cruz has engaged in sexual assault of me, correct? Correct. And at some subsequent point, the department sends out an e-mail that essentially says, you know, we can't, Mr. Cruz can't come back right away, but please call him and give him encouragement. Correct? No. What you're referring to is Mr. Cruz before Ms. Fuller. There's a staff meeting. There's a staff meeting and an e-mail, correct? Let me address this. What Mr. Cruz, when Mr. Cruz was first suspended in August 15th of 2011, that is when the department learned that he was under investigation for a different. Here's September 6th. Fuller talks to Harvey and says that Cruz raped her, correct? Correct. Okay. September 7th, Harvey sent an e-mail with an update on Cruz saying in part, he sounds rather down as to be expected. This is always one thing I hate about these things. He cannot come to the office until the investigation is complete, then leaving out some words in there. If you want to talk to him, give him some encouragement, et cetera. Please feel free. What I was referring to is the e-mail that went out in relation to the August. Right. This is the e-mail I was talking about. Okay. And Judge Graber is a better cross-examiner than I am. So my question is, the woman has come in the day before and said that Mr. Cruz has raped her. And the day after, a supervisor sends out something that says, gee, we really, in effect, we really want him back. We can't talk to him. Please call him up and give him encouragement. Wouldn't an objective person under those circumstances feel that she was working in a hostile environment? I don't think so, because for this reason, he had not been in the workplace since August. But they want him back. They're saying we want him back. They're basically feeling sorry for him and not for her. And in terms of hostile work environment, it has to do with the perception of a reasonable person in her shoes, not what's secretly in people's minds on how long he's been gone and so on and so forth. But why isn't this at least a jury question? We're dealing here with summary judgment, right? Well, and I think what we're also dealing with is, at this point, you have an individual who has raised accusations. It is being investigated, and there's no question that they did investigate. No, I'm not quarreling for the moment with that. I'll quarrel with it later. I'm asking why this email, in and of itself, doesn't create a factual question about whether or not Ms. Fuller was subjected to a hostile work environment. Wouldn't an objective person, the day after she reported to her supervisor that she had been raped, feel that the work environment had become hostile if the next day her supervisor sent out an email that said, please call up the rapist and give him encouragement? I don't think so, simply because the attacker is not there. There's no question he wasn't there. But that's not the point. The question is how would a reasonable person in her shoes feel about coming to work after her supervisor has basically said, give your support to the rapist and not the victim. That's basically how a person could, a jury could, read that. And I think it also has to be kept in context that it's very clear and she acknowledged that the supervisors were very supportive of her. They maintained her anonymity. The staff did not. And that's why I asked your opponent about animus. It seems to me one can create a hostile work environment without intending to. Do you agree? In a hypothetical context, yes. I mean, I'd have to know more about what happened. So it has to be so severe or pervasive to alter the conditions of employment. We're to look at the frequency of the discriminatory conduct, the severity, whether it's physically threatening or humiliating or a mere offensive utterance. And so would a reasonable person in Ms. Fuller's situation think that it reached that level of severity and pervasiveness so as to alter the conditions of employment, I guess, is our question here. And I think not with that. If you take that e-mail all by itself, but it has to be taken in the context of what they did, is the e-mail went out, I grant you. But what you also know is she was allowed to take whatever leave she wanted. Without pay. Whatever leave she wanted. Without pay? I'm paying. But was she entitled to pay? No. She was able to choose. There was discretion to give her pay, though, yes? No, there was not. There was a preexisting policy that the director had created five years earlier that had been in place for that period of time. And it allowed paid leave under extraordinary circumstances, correct? That's correct. And is it your view that as a matter of law, having been raped by a co-worker is not an extraordinary circumstance? Because it would have to be as a matter of law, because we're here on summary judgment. Never suggested that it wasn't an unusual circumstance. But what is very clear is the director had, in other cases involving unusual circumstances, had said if the request is for voluntary paid leave by the employee, regardless of the circumstances, it's going to be denied. Well, there's a question, isn't there, about voluntariness, too, in this sense. I mean, it's all part of the same train of events. Because, in fact, Ms. Fuller was too distressed to work because of what had happened to her. So I don't know if that counts as voluntary in the normal sense. But it strikes me that the provision of leave to one and not the other is also part of how a reasonable person would perceive the work environment. Well, if you're looking at the perception because the accused, somebody who is being investigated for possible termination, I mean, she has to look at that in that context also. She is not under any kind of threat of losing her job. It never was. Help me out with this record. I know the record subsequently establishes during litigation that although there is this unusual leave policy, the director never gives it. Was she told that during the time period? Yes. Yes. When she was asked it. I know she was told she didn't qualify as unusual. Was she told that nobody ever qualifies as unusual? Yes, I believe she was. Where is that in the record? I can't cite you to the record, but I believe it was. Because when I looked through, all I saw was she was told, no, your situation doesn't qualify. You may take paid leave. Was she told, yeah, that provision is there, but we never use it? I don't know if she was ever told that we never use it. I guess the question I'm leading up to is this one. Let's assume that the director acted in perfect accord with his previous policies. Isn't the fact that her rapist is being given paid leave and she's not, combined with other facts, something that a jury could consider in whether or not a hostile work environment was being created? I don't think so, because the question has to be is whether the decision to deny her, like everybody else, every other employee, is treated exactly the same on requests for paid leave. Well, had you ever had a situation? Considered to ratify or acquiesce in the harassment. So for employer liability, we would need to find ratification and acquiescence in the harassment by not taking immediate and corrective actions. Did the employer not ratify and acquiesce in Mr. Cruz's alleged harassment? No. He was removed from the workplace, was already removed from the workplace. They investigated him, which led to his firing. And I would suggest that under the Loudermill case, their choices of paid leave for him or not, before him being criminally charged, which he never was, he was never criminally charged with anything. So you were supposed, the employer is supposed to take immediate and corrective action, reasonably calculated, to end the harassment and deter future harassment from the same offender and to take disciplinary action. So did the employer do that? Precisely. And Mrs. Fuller admitted that even after she came back to work, before and after she came back to work, Mr. Cruz never sexually harassed her in the workplace, never did, nobody ever did. She admits that. Her complaint is that he was getting paid leave and she was not, but he was facing termination. She never was. She was granted FEMLA leave as she wanted it. She was allowed to use all of her accrued leave that she had. And when she asked for reconsideration by Mr. Atencio, Mr. Atencio in the November meeting told her, you know, the policy is, the answer is no, categorically. I will go back to management and ask them if during days that you need to be in court over the CPO litigation or your, or any criminal case or anything like that, if you can have paid leave for that. He said I would, he would approach the director again and see if that was a possibility. And before he got an answer back, she quit. So I saw a case, I think it was Little was cited by the opposing counsel, where having been raped and then going to the work and the rapists are still present in the workplace and that was enough to create a hostile work environment. I know that wasn't the case here, but are you aware of any case where not being allowed to go on paid leave, where the rapist has been removed from the office, created a hostile work environment? No. I'm not aware of any case that suggests that. And if you, if you were, we would both, we'd all have an easier time today. We'd be discussing it. Let me ask you, let me ask you to hypothesize a different case. Let's assume exactly the same facts at this case, except the e-mail says, Mr. Cruz has been accused of, this e-mail that went out today after she reported, Mr. Cruz has been accused of sexual misconduct. We all know him and love him and we know he didn't do it. Everything else is exactly the same. Would that be sufficient to create a hostile work environment? I don't think so, simply because it has to be a sexually hostile work environment and it is not. And we hope he's back soon. Because he is removed, she has no contact with him whatsoever. And the employees, I mean, I understand your hypothetical. I guess my question is, and maybe just dealing with the facts of this case, she surely was given the impression because she was at the prior staff meeting also, correct? The one that preceded this e-mail, where somebody said, we hope to have him back soon. I'm not certain she was. I think she may have been away from the out of the workplace staff meeting. But if you put all that together and you think your employer has given the message that he wants your rapist back in the office, even though he doesn't bring the rapist back, is that enough to create a hostile work environment? I don't think that is. Especially under the facts of this case, where she knows he's not there, she knows he's not coming back. And the suggestion that he could come back when he never did and he never made any attempt to. It's also got to keep in mind, this workplace is a secure facility with locked doors. Nobody without access can get in. There's a receptionist with a locked gate you can't get in. And everybody there, all the probation officers are armed. Every single one of them. So it's a very secure facility. I was also wondering, as a hypothetical, we hear all these cases where people are accused of sexual harassment or rape and the facts don't bear it out. So what sort of responsibilities would an employer have to Mr. Cruz? You know, let's assume that Ms. Fuller had made up these charges and the other charges were never pursued by the sheriff's office. What would the employer be responsible for to Mr. Cruz? Well, I think the responsibility would be, is through the investigation, that they would be neutral. And I think it's important to note that Ms. Fuller, in her discussion with the management at the November meeting, specifically said that. She acknowledged that, that the investigation needs to be neutral on both sides and get to the facts. So I think if they, one, they get the complaining person's allegations, they investigate it neutrally. I think the action they took to preserve Ms. Fuller's anonymity removed the possibility that other people within the department, other staff, who may be friends with Mr. Cruz and would react badly or might harass her in the workplace because they know she is the person accusing him of something that they don't think he would do because he's their friend. They took action to make sure that didn't happen. And what is undisputed is it did not occur. Now, whether somebody would have said something sexually harassing to Ms. Fuller if they had known that she was the complaining person with these allegations, I don't know. But what we do know is he didn't do, that they did not do that and it did not occur. That's very clear. The idea that there is something inappropriate with allowing Mr. Cruz to resign rather than face the termination process, the hearing process, ignores the fact that, I think as you can see from this record, if Mr. Cruz had chosen to contest this termination, he was not without factual and legal arguments to do that. Although you're sort of arguing against yourself here, aren't you? Because your client terminated him based on good cause. They felt that there was cause to terminate him. So your client's position is that he did it. No. No. Our position is we felt there was cause to terminate him. What was the cause to terminate him? As I put in the note, there were a number of them. One of them was conduct unbecoming, which included the assault against Ms. Fuller. I'm not sure. I'm just saying your client did conclude that there was a probability that he'd engaged in this conduct. They would not have pursued the no and pursued his termination on those grounds if they didn't feel there was. All I'm suggesting is it's kind of strange for you on behalf of your client now to say, well, maybe he didn't do it. No, I'm not. Because then you fired him inappropriately. All I'm saying is a neutral hearing officer, if he'd have chosen to contest it, may very well have found differently. Thank you, Counselor. You've exceeded your time. And Ms. Herstead, you have one minute and change, I think. Your Honors, there's four brief points I wanted to mention. First of all, that email sent on September 6th was sent to all staff, all 50 employees that worked at the D3 offices, including Cindy Fuller. Second, on November 11th, when she brought up this issue of the protective order, Henry Atencio responded, he's still our employee and we have to be conscious of his rights. Is that wrong? Pardon? Is that wrong? Well, at that stage, they had made a decision to terminate him. So, no, it's not wrong, but it's basically indicating to Cindy Fuller. He was still an employee and he still had rights. You don't disagree with that? No, I don't disagree with that. But they had already made the decision to terminate him at that stage. My difficulty on both sides with this case is that in the absence of this email, I don't think you've got much. And so the question is, is it enough? Could you address that? Well, Your Honor, I think that it is. In 2008, Ms. Fuller had made a sexual harassment complaint. She had reported a sexual harassment complaint to Roberta Hertz. Roberta Hertz didn't even call her back when she left a message saying, this man grabbed me and forcibly kissed me. How IDOC management reacted in 2011 was more of the same. She asked her to file a sexual harassment complaint against Cruz. They didn't respond. She said, I'm suffering from a hostile work environment. People are telling rumors about me and are not talking to me. IDOC didn't respond. She also said, I want this CPO published. IDOC did not respond. This was more of the same. So even absent this, I mean, the email makes it. The CPO, that was my question, right? Whether under Idaho law, whether that could be made public. And at the time when I asked you the question, you said that wasn't the issue. So now you're saying that is an issue. So could you tell me what the Idaho law is on that? The hearings related to the protective order were sealed. So people couldn't come and listen. Wasn't the order itself issued under seal? Pardon? Was the order itself issued under seal? The order itself was issued under seal, but that doesn't mean that it can't be. Without telling people he can't come within 1,000 feet of the property, a protective order is sort of useless. So even though she wasn't saying we want everybody to know that Cindy Fuller got a protective order against Cruz. She just wanted people to know that he couldn't be near the property. Well, and so they sent out something that said this is to remind you that he's not allowed under property. The whole place is armed, according to your colleague. If anybody sees him, call a supervisor. That seems to be a pretty reasonable response to her request to remind folks that he shouldn't be there. See, that's why it seems to me, I guess you addressed it, in the absence of some other evidence of hostility, I don't regard the way the protective order was handled as much probative of anything. Did you have one other point that you wanted to make? You're out of time. My other point was on November 10th, this was brought up with opposing counsel, Henry Atencio, and it's at the record at ER 99, she said, this is unusual, I should get paid leave. And he says, we don't think that the situation arises to the point where it's unusual and would warrant leave with pay. So let me ask you the question I asked your colleague, if I can continue. Was she told before this litigation began that nobody gets the unusual pay? Because that's apparently the position of the department is we've made an administrative decision years before that even though the code said that, nobody would ever get unusual leave. Was she ever told that? She was not ever told that, Your Honor. Thank you, counsel. The case just argued is submitted, and we appreciate the arguments from both of you. With that, we are adjourned for this morning's session.
judges: Graber, Ikuta, Hurwitz